After a jury trial, Mr. Williams was convicted of conspiracy to possess with intent to distribute marijuana, Hobbs Act robbery, a 924c offense, and being a felon in possession of a firearm. On appeal, Mr. Williams raises two related challenges to his convictions. First, he asserts insufficient evidence exists to support all of his convictions. Second, under the rapidly changing law, he asserts that Hobbs Act robbery is not a crime of violence for purposes of the 924c. Can I just interrupt you to confirm, and maybe it isn't confirming because I couldn't tell for sure, whether you agree that if the marijuana distribution conviction is affirmed, that moots or eliminates the 924c issue. So turning first to the sufficiency of the evidence argument, the government failed to establish sufficient evidence for all of his convictions. And for that reason, this court must either vacate his convictions or alternatively order a new trial. Starting with count one, the government failed to establish a conspiracy to possess marijuana with intent to distribute. And in these cases, traditionally there's similar kind of evidence presented when trying to establish intent to distribute. A lot of times you see testimony on the weight. A law enforcement officer will then explain that this weight is not consistent with personal use, but in fact is consistent with distribution. You'll see other testimony about other indicators and explanation by law enforcement that these indicators also establish an intent to distribute. All of that traditional evidence was not presented in this case. First, there was no conclusive evidence of weight. The only evidence to even point to weight in this case was the canisters. And there was stickers on the canisters that indicated weight. But all that indicates is the weight that it was when it was purchased in Colorado. Am I right that the actual canisters were not introduced in evidence, but only the photographs? That's my understanding, Your Honor. Proceed. First off, these pictures, and there's no testimony to clarify, doesn't indicate if that weight includes the canisters or it's simply the marijuana. But more importantly, there's evidence that Mr. Boyd was selling marijuana to other people. He traveled all the way from Colorado to Iowa. So there was lots of opportunity for, even if that weight was correct initially. As I understand it, the shooting was one day after the purchase. That's my understanding, Your Honor. Okay, so he'd had to do it on the road, so to speak. He could have. And text messages. It's possible, certainly. Yes, it is possible. And there's text messages between Mr. Boyd and the alleged Mr. Williams that indicate he was actively conversing with other people, and other people were trying to purchase marijuana from him. So there is an indication from. Yeah, but what about on balance all of the text messages? On balance, aren't all of the text messages bad for you? Some are not great for us. I would acknowledge that. But the question is whether they're not great and that they establish an intent to distribute. And they simply do not in this case. At most, the evidence discusses that Mr. Williams is trying to purchase marijuana from Mr. Boyd and that he's meeting up with Mr. Shaw beforehand. Again, these text messages don't get the government to an intent to distribute. Well, what would the jury reasonably, what could the jury, viewing the verdict evidence favorably, when the seven more, what could that mean other than a distribution quantity? The seven more. Or when he says, I want seven more, and Boyd says 17.50, which is almost certainly a price. I think it's too vague for the lay juror to really understand what is happening. Yeah, but that's, we've got to view it as to what they, it seems to me, if they viewed it, viewing it favorably to the verdict, what quantity does seven suggest? In the kilograms? I think it's too vague and all this court. Well, but what's 17.50? Is there evidence in the record of the wholesale street price for marijuana? There absolutely is not, Your Honor. And the 17.50, again, I think we as attorneys are familiar with some of this evidence and maybe could jump to that conclusion that that is a lot of money and might be indicating the large purchase of marijuana. But the question here is, what could the jury reach? What did the jury know? We can't assume that jurors might have knowledge like attorneys who deal with these situations all the time or law enforcement officers might have. It's the burden of the government to present that testimony and make those links so the jury could reach those conclusions. You've got scales and bags, though, right? That's in many of these cases. There were scales in the car, Your Honor, yes, and there was baggies in the car. But what the baggies weren't, what we generally see when it's evidence of distribution is that maybe a defendant has multiple baggies that they pull out of their pocket and there's cocaine in each baggie. The baggies in the car only contained residue. So this isn't a situation where there was individual baggies of marijuana that might support that there was an intent to distribute. Was there testimony as to what it was residue of? Marijuana. Was that an expert or who? I think it was a law enforcement officer who testified as to that. But again, there's no connection made. And there were Ziploc bags at an apartment with Williams' fingerprints on them. There were, Your Honor. But again, this is not challenged as Mr. Williams possessed with intent to distribute. This was charged in that he conspired with Mr. Shaw to possess with intent to distribute. So the fact that there might be evidence that Mr. Williams himself in a separate location was indicative of drug trafficking doesn't mean that him and Mr. Shaw had this agreement to possess with intent to distribute together. But turning to the baggies even in the car, there was not that connecting evidence between what was presented and the explanation to the jury. In every single case that I have seen with these possession with intent to distribute, the law enforcement officer will then explain. They're in individual baggies. This indicates that the defendant had the intent to sell it to other people. When they're baggied like this, it's not for personal use. Again, there is absolutely no evidence on that presented to the jury, and we can't assume that juries know the ins and outs of the drug trade. Turning to count two, the government also failed to establish a Hobbs Act robbery. When analyzing this claim, it's important to keep in mind that the government did not present this or charge this or submit it to the jury as an aiding and abetting offense. They didn't pursue Pinkerton liability. It was not charged as an attempt. The theory that the government pursued was that Mr. Williams committed the taking by use of force. The general theory was that Mr. Williams shot Mr. Boyd and took the marijuana. The biggest weakness on this count is that there is no evidence of a taking by Mr. Williams. At most, the evidence established that there was one witness who testified that an individual with a firearm generally matched Mr. Williams' description, but she was also very equivocal, and she said, well, you know, it was a long time ago, I'm not sure. But the marijuana ended up in Mr. Shaw's car. There's no evidence that Mr. Williams was the person that took the marijuana. Mr. Shaw was the individual that left the scene with the marijuana. So even if the government could prove that Mr. Williams was the shooter, which our position is that they can't, that still does not establish that he is the one that took the marijuana. All indicators point to Mr. Shaw being the individual that took the marijuana. And, again, because he is charged as the principal, as the person who committed the offense, that is what the government is required to show, and they failed to do so. As I noted, we also assert that there is insufficient evidence that he took it by force because the witness testimony was unclear and equivocal. And also, notably, the victim in this case, Mr. Boyd, did not testify for similar reasons. I got from the brief, and correct me if I've misinterpreted, that the three witnesses' descriptions of different aspects of the aftermath were consistent. In other words, one said there was a man jumping out of a window, which, of course, corresponded with the broken window of Burns' apartment and the gun with the fingerprints. Another one said a man drove away in a car, which would have been Shaw. So I didn't see any, from the jury's standpoint, troubling inconsistencies with the eyewitnesses, even though none could say from A to Z. Right, and that is our point, Your Honor, is that there is some testimony for the jury to reach the conclusion that Mr. Williams was there, but Hobbs Act robbery is not established in that he's at the scene of a shooting. Hobbs Act robbery is established when the government can prove that Mr. Williams was the individual that shot Mr. Boyd, which was the theory in this case, and took the marijuana. There is no witness testimony that he was the shooter, and there is no witness testimony that he took the marijuana. If there are no further questions at this time, I wish to reserve the remainder for rebuttal. Thank you. Mr. Price. May it please the Court, Counsel, Brad Price of the United States. The defense convictions in this case were supported by sufficient evidence. One of the difficulties, I think, with the defendant's argument is that it wants the court to do two things. One, it wants the court to view each piece of evidence by itself and ignore the totality of the circumstances, and two, it wants the court to discount circumstantial evidence. I want to turn, and of course the case law is clear under Rodriguez-Ramos in this circuit, the elements of conspiracy can be proved by direct or circumstantial evidence. The government, of course, does not have to prove an explicit agreement under this court's cases and Smith and Adams cited in our brief. But we did prove explicit agreement here, I would argue. These text messages are- While I'm thinking of it, do you agree that no law enforcement officer gave the kind of testimony we often see identifying what seven more and 1750 would have meant in street talk? I agree that that specific testimony did not exist, Judge, yes. And there's also no testimony that this amount of marijuana is a distribution amount and this is the way it's typically put on the street or something like that. There's none of that testimony, Judge, that's true. And so I'll take that up if I could. A couple of things about count one. There was conclusive evidence of weight. I think if the court takes a look at the record, it will see that the marijuana itself was introduced at trial. The actual drugs were in evidence, in bags, able to go back to the jury if it wanted to see it. And the marijuana canisters were introduced as well. The canisters themselves? The canisters. I thought- We put stickers on the canisters. I thought looking at the trial transcript, the only thing that was introduced was the photographs. Well, Judge, I mean, of course, whatever is in the transcript is what happened. My recollection of trying the case is that we did move canisters. We didn't admit all the canisters. I recall a couple of canisters that didn't get admitted, but I remember putting the stickers on the canisters and trying to move them. So I guess I would just have to rely on the transcript. And you believe the court admitted some of them? I believe so, Judge. That may be why I was confused. Go ahead. I thought just the photographs. Were the photographs of canisters actually containing apparent marijuana? They were, Judge. So the way we sequenced the exhibits was, for example, Government 10 would be a photograph of the canister with the label. And then Photograph 10A or 11 would be a photograph of that canister opened. And if one looks at the exhibits, you can see that the canister is full of marijuana, of raw marijuana. And this was coupled, of course, with the video evidence that the jury saw of Leonard Boyd just a day or two before buying some of that very marijuana in Colorado. And, of course, there was testimony from someone from Colorado, from the Marijuana Board there, that talked about the pattern and practice of these dispensaries, educating the jury as to how the bud tenders measured the marijuana out and how they dispensed it. And then a couple of days later you have some of that very marijuana that we tied to some of that very surveillance video where Leonard Boyd is wearing the same black T-shirt in which he's shot coming back into the district. I think the text messages here, I guess I would make the point, too, we don't have to assume that the jury knows the ins and outs of the drug trade. We have to ask whether any reasonable juror, taking all this evidence and drawing all inferences in the government's favor, could find a conspiracy. I would submit that they could. But these text messages, I've got seven more. Well, seven were seized from the trunk. So I don't think it takes a great deal. It doesn't take any speculation to know what we're talking about. When you take the texts plus the evidence, again, not just looking at one text in isolation but looking at the totality here, you see the circumstance here very clearly set up a drug deal. And the drug deal was communicated about in detail. Is there any context for the 1750? Is it just the numbers, I guess, not even words? 1750? 1750 was admitted in the text without context. Right. It's just one text. Yes. So we're talking a lot about drug weight and drug quantity. The cases in these circuits, of course, say that if all you do is show a lot of drugs, that alone is sufficient. But it doesn't say, the case law doesn't say that that's the only way you can prove intent to distribute. Indeed, in this case, we have multiple other indicia of intent to distribute, notably the firearms. Again, the cases here say the Haney case cited in our brief at 18 talks about the presence of firearms being an additional factor from which a jury can infer intent to distribute. Well, here we have Mr. Williams on video during the sharp purchase of the very gun that shot the victim just 11 days before he shot him. And we have the companion gun that was purchased at that same time, seized from Angie Burt's apartment, from his girlfriend's apartment, who lives in the very cul-de-sac where the robbery occurred, where the shooting occurred. We also have the ammunition that was purchased at that Tyson store just 11 days before the robbery, in Angie Burt's apartment with Williams' fingerprint on it. We also have a third gun there found in Angie Burt's apartment with Williams' fingerprint on it. We also have additional marijuana in a big bag labeled shag and additional baggies there that do show, despite counsel's argument, they do show. That was in Burns' apartment? In Burts' apartment and with Williams' fingerprints on the baggies. That shows, contrary to argument this morning, that does show that when Williams and Shaw are texting back and forth about getting marijuana, they're not texting back and forth about smoking that much of it. They're texting back and forth about selling it. When they say, I got seven and seven are seized, and they're all different kinds, so you don't have all the same thing, it is reasonable to infer that the reason one cares about not having all the same thing is so that they can market that in the drug trade. We don't have to assume that the jury found that. It is reasonable for them to find it as an inference, and I believe that's what they did. Turning to the second, I'll call it the second batch of sufficiency here, the Hobbs robbery, the 924C, and the felon in possession, as the district court found when it denied the defendant's motion for a new trial, I think it's at docket 126, the jury is not required to believe that when a body is shot and bleeding in the street, a drug deal has gone smoothly. The fact that the victim is bleeding out on the street with one of the victims applying pressure, minutes after texting about a drug deal, including the location, including the 1750, including the I've got seven more, and we seized seven, a very reasonable inference is that the defendant shot him, and he stole the marijuana. And the marijuana got into the car. It's not Shaw's car. It's the car that Williams and Shaw drove together to the drug deal in. And the evidence shows that the very gun that shot Leonard Boyd again is that FXT3020 handgun that was purchased at Tyson's 11 days before. Companion handgun winds up in Angie Burt's apartment. The ammunition winds up in Angie Burt's apartment. Kevin Williams winds up in Angie Burt's apartment. How do we know this? He admitted it. He admitted it in jail calls. Well, I implicated myself when I jumped out that window. And as your Honor pointed out, the eyewitness testimony is consistent as to an African-American male with long hair jumping out the window, an African-American male with long hair being the shooter, or at least holding a gun. And, yes, the witness says I'm not sure, but I would argue that goes to her credibility. She can only say what she can say. And it was a long time ago. But she testified, to the best of her recollection, and it's consistent with Williams being the shooter. And in addition to that, you've got the, I think it was Mr. Hansen was on the scene right after the shooting, and he videoed it with his iPhone. Not the shooting, but the aftermath. And he also, he's the one who reported DGYA-25. This is the license plate. I just saw an African-American male with, like, no hair drive away, which is, of course, corroborated by the traffic stop moments later, where we find the gun that shot Boyd matched with ballistics. We find the marijuana, the seven canisters that corroborated by the, hey, I've got seven more texts. And during that traffic stop, of course, Williams is calling Shaw's phone at that very moment. In addition, we've got the geolocation data that pings Williams' phone close to the shooting at the time of the shooting. And we have additional statements by Williams that only make sense in the context of him being the shooter and him being involved. We've got a wiretap intercept where Williams gives a third party the phone number for V, for Vigaila Shaw, the co-defendant, and wants the caller to put the press to him because they have to find out who's snitching. There's another jail call. In addition to the jail call where Williams puts himself at the scene and admits to jumping out the window consistently with eyewitness testimony, he tells the caller that Angie Burt, his girlfriend whose apartment he's jumping out of, can't testify because he's been feeding her cocaine. Taken together, the evidence in this case is sufficient to support the verdicts. The court, in viewing the record in light most favorable to the government, should affirm the defense convictions. Thank you. Thank you. Ms. Quick for rebuttal. Thank you. This is not a question of disregarding or discounting circumstantial evidence. This is the fact that the circumstantial evidence doesn't support the specific elements of the offense. This is just speculation. Turning to the arguments of quantity and what was introduced, I would acknowledge that I wasn't the trial attorney, so I wasn't there. My reading of the transcript and the record was that it was just the pictures, but I just want to be clear that I wasn't actually the trial attorney. But, again, all there is, even if it comes in the physical form or in a picture, all there is is an indication of weight, as it might have been in Colorado. The testimony of what it weighed and what that meant was not presented to the jury. Also, to the argument of firearms, again, there is a firearm found in the trunk, but there is no testimony explaining to the jury, yes, firearms generally indicate that someone is distributing, that someone is part of the drug trade, that they aren't just possessing or using the marijuana. Again, we don't have that evidence and the jury did not have that evidence. The problem is this court can't analyze this evidence as it was presented, as individuals, as we do, that deal with these kinds of offenses day in and day out. Jurors can't eyeball canisters of marijuana and say, yeah, that looks like a lot. It doesn't seem like a possession amount. That seems like a distribution amount. That's why this expert testimony explaining quantities, explaining the circumstances to the jurors, is necessary. In turning to the Hobbs Act robbery, what the government points to is evidence that says, this seems like Mr. Williams was involved. This seems like he was there and maybe he was doing something that he wasn't supposed to do. But a conviction can't be upheld because it seems like Mr. Williams was involved and maybe he was doing something bad. Convictions must be upheld because the government met its burden to establish every element of the offense. And when looking at the specific elements of the offense, the government simply failed to do that. The circumstantial evidence does not support a conclusion that Mr. Williams, in fact, took the marijuana from Mr. Boyd by the use of force. If there are no further questions, we would ask. I do have one. I have one of those coincidence situations. And this is the second case raising a sentencing packaging issue in this year, and they're not that common. Did you happen to catch United States, Wright versus United States, which panel opinion on September 5th? I did not, Your Honor. Okay. I was going to see if you could distinguish it. But because they're not identical, but they're close. Thank you. Thank you, counsel. The case has been very, very well argued on the facts and the law, and we'll take it under advisement.